**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jesse ZAMARRIPA, Defendant–Appellant.**

**No. 89–2145.**

United States Court of Appeals, Tenth Circuit.

June 11, 1990.

**338**

Teresa E. Storch, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant.

William L. Lutz, U.S. Atty. (Stephen R. Kotz, Asst. U.S. Atty., with him on the briefs), Albuquerque, N.M., for plaintiff-appellee.

Before SEYMOUR, BARRETT, and BRORBY, Circuit Judges.

SEYMOUR, Circuit Judge.

Jesse Zamarripa was charged with three counts of abusive sexual contact in violation of 18 U.S.C. §§ 7(3), 2244(a)(1), and 2245(3) (1988). The three counts alleged a series of three offenses occurring respectively in April, May, and June, 1988, and involving the same victim, an eight-year old girl. Zamarripa pled guilty to the second count pursuant to a plea agreement under which the other two counts were dismissed. In sentencing Zamarripa, the district court departed upward from the Sentencing Guidelines. Zamarripa challenges this departure on appeal. We vacate the sentence and remand for resentencing.

## I.

The stipulated facts in this case reveal that Zamarripa was a personal friend of the victim's family and was the victim's babysitter at the time of the occurrences. As a result of Zamarripa's conduct, the child's ability to trust adults and authority figures was seriously undermined. The child's therapist recommended counseling for more than a year, and stated that it is not uncommon for victims of this type of assault to experience difficulty when they reach the age for dating and sexual activity. However, the parties also stipulated that:

"The therapist is unable to give an opinion on whether the child's behavior/psychological condition is within the range of 'normal' for someone who has experienced an assault such as hers. At most, the therapist would state that every case is different, and the therapist is unwilling to state that a certain person's reaction is normal or abnormal."

Rec., vol. I, doc. 14 at 1.

Under the Sentencing Guidelines in effect at the time the offense was committed, the base offense level for abusive sexual contact was six. *See* United States Sentencing Comm., *Guidelines Manual* § 2A3.4 (hereinafter Guidelines).[1] The parties stipulated to a four-level increase under section 2A3.4(b)(2),[2] and a two-level decrease for acceptance of responsibility, resulting in an offense level of eight. The plea agreement recognized that these stipulations were not binding on the court. Under the Guidelines, an offense level of eight and Zamarripa's criminal history level of I require a sentence of two to eight months.

Prior to sentencing, Zamarripa filed a sentencing memorandum in which he challenged indications in the presentence report that an upward departure from the Guidelines was warranted. The report suggest-

ed an upward departure might be appropriate because the Guidelines failed to consider adequately the increased psychological damage to the victim resulting from Zamarripa's abuse of his position as the victim's caretaker, and because the offense occurred on three separate occasions. At the sentencing hearing, the district court did not specify what Zamarripa's sentence would be under the Guidelines, nor did it adopt the presentence report. Instead, it announced its intention to depart from the Guidelines and stated:

"The Court finds for an upward departure pursuant to Section 5K2.0 for the following reasons: one, the defendant's relationship to the victim at the time of the instant offense was that of caretaker. He was entrusted with her well-being and this contributed to the ongoing nature of the crime and, in addition, had greater psychological impact on the victim demonstrating a greater harm, which are factors not considered by the Sentencing Commission in formulating guidelines in the instant case.

Two, pursuant to 18 United States Code Section 3661 and guideline 1B1.4, the Court finds that there are aggravating factors in that the defendant engaged for a period of time in behavior similar to the instant offense with the same victim."

Rec., vol. III, at 8. The court sentenced Zamarripa to fifteen months in prison and a three-year period of supervised release, and ordered restitution in the amount of $1376.

## II.

Our review of a district court's decision to depart from the Guidelines requires a three-step analysis. *See United States v. White*, 893 F.2d 276 (10th Cir.1990). First, we must determine whether the circumstances cited by the district court justify

---

1. This Guideline was amended effective November 1, 1989. *See* Guidelines, App. C, amend. 95. Because the offense of conviction occurred before that date, the earlier version was applied here.

2. Section 2A3.4(b)(2) provided for a four level increase if the abusive sexual contact was ac-

complished as defined in 18 U.S.C. § 2242 (1988). Section 2242 prohibits engaging in a sexual act with a person who is "(A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act." *Id.* § 2242(2).

departure. *Id.* at 277. Second, we must ascertain whether the record contains a factual basis to support the circumstances upon which the district court relied. *Id.* at 278. Finally, we must determine whether the degree of departure is reasonable. *Id.*

### A.

As its first ground for departure, the district court relied on Zamarripa's abuse of his caretaker relationship with the victim and the resulting "greater psychological impact on the victim demonstrating a greater harm." Rec., vol. III, at 8. This circumstance will justify a departure under the first step of our analysis only if it is a "circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1988). Accordingly, our initial inquiry is whether the Guidelines contain provisions under which the cited circumstance, sexually abusive contact by one in a caretaker role, is given weight in the offense calculation.

■ Under Guidelines § 3B1.3, the base offense level is increased by two levels "[i]f the defendant abused a position of ... private trust ... in a manner that significantly facilitated the commission ... of the offense." The Application Note to this provision states that "[t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons." Although neither the district court nor the Government relied on section 3B1.3, neither has explained why this section is not applicable to the undisputed facts here. A babysitter is in a position of trust, and this position certainly enables him to commit a sexual crime more easily than a man on the street. It appears to us that the instant circumstances plainly fall within the ambit of section 3B1.3 and its Application Note. We likewise discern no rationale for concluding that this Guideline does not adequately cover the situation of abusive sexual contact achieved through abuse of a position of trust. Accordingly, we conclude that this circumstance alone does not justify an upward departure from the Guidelines, although the district court could have used it to increase the base offense level.

### B.

■ The district judge also relied on his finding that the abuse of trust resulted in "greater psychological impact on the victim demonstrating a greater harm." Rec., vol. III, at 8. The Guidelines specifically acknowledge that a departure can be based on extreme psychological injury.

"If a victim or victims suffered psychological injury *much more serious than that normally resulting from commission of the offense,* the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.

"Normally, *psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns.* The court should consider the extent to which such harm was likely, given the nature of the defendant's conduct."

Guidelines § 5K2.3 (emphasis added).

■ Under step one of our analysis, if the victim suffered more serious psychological injury than normal, then an upward departure may be justified. We must therefore proceed to step two and determine whether, under the clearly erroneous rule, the court's finding of greater than normal psychological harm is supported by the record. We conclude that it is not. Departure is only allowed if the harm is "much more serious" than that normally

resulting from the offense, and likely to be of extended or continuous duration. The government bears the burden of proof on this factor because it increases the sentence. *See United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir.1990). In this case, the parties stipulated the therapist was unable to state that the harm to the victim was greater than normal. We have carefully reviewed the presentence report and it adds nothing to support a finding of unusual psychological injury necessary to support a departure. The district court therefore erred in departing from the Guidelines on the basis that the crime resulted in greater than normal psychological harm.

### C.

■ The district court's final reason for departing upward was that Zamarripa "engaged for a period of time in behavior similar to the instant offense with the same victim." Rec., vol. III, at 8. The court obviously was referring to the first and third counts, which were dismissed as part of the plea bargain. Because an upward departure may be supportable on the basis of Zamarripa's multiple sexual contacts with the same victim, we consider the circumstances in which such a departure is appropriate.

The propriety of a departure based on misconduct not resulting in conviction was comprehensively addressed in *United States v. Kim*, 896 F.2d 678 (2d Cir.1990). The court there pointed out that the Sentencing Commission "treated misconduct not resulting in conviction in four ways, each of which is instructive as to the issues on this appeal." *Id.* at 682. Because the analysis in *Kim* informs the issue before us, we summarize it here. First, *Kim* observed that the Commission labeled as "specific offense characteristics" types of misconduct that "typically occur in the course of the offense for which the defendant was convicted and that aggravate the offense, for example, display of a weapon, infliction of injury, and taking large sums of money in connection with the offense of robbery." *Id.* The Commission assigned various increments to the base offense level to add punishment for these factors. Second, instances of misconduct to which a defendant stipulates when entering a plea are treated like convictions and trigger application of the multiple count analysis set forth in sections 3D1.1–.5. *See* Guidelines § 1B1.2(c). Third, prior similar conduct not resulting in conviction may be taken into account in departing from a defendant's criminal history category through the operation of section 4A1.3(e), which allows a departure based on "prior similar adult criminal conduct not resulting in a criminal conviction." Fourth, some acts of misconduct support an upward departure under the general authority of section 5K2.0.[3]

In applying the above analysis, the court in *Kim* recognized that when a defendant pleads to one of a series of offenses too close together in time to allow the unpled offenses to be considered prior acts for purposes of section 4A1.3, and those offenses are not subject to treatment as relevant conduct for grouping under section 1B1.3, an upward departure under section 5K2.0 may be appropriate. *Kim*, 896 F.2d at 684. Such is the case here.

The court in *Kim* also addressed factors relevant to the degree of departure based on acts of misconduct not resulting in conviction, pointing out that "[o]nce acts of misconduct have been identified as warranting departure, the structure of the Guidelines offers some guidance as to the

---

3. Section 5K2.0 states:
   "Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines....' Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing judge. Similarly, the court may depart from the guidelines, even though the reason for departure is listed elsewhere in the guidelines (*e.g.*, as an adjustment or specific offense characteristic), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate."

normal *extent* of the departure." *Id.* The court turned first to the multiple count analysis of sections 3D1.1–.5.

> "Since the Commission carefully constructed a system for aggregating acts of misconduct that result in conviction (or stipulation in connection with a plea), that system must initially be used by a judge contemplating enhanced punishment for acts of misconduct not resulting in conviction, where the acts of misconduct constitute offenses for which guidelines have been established. Otherwise, an act that need be proven only by a preponderance of evidence might result in more punishment than would be called for if the act had been proven beyond a reasonable doubt and had resulted in conviction. Once having applied the multi-count analysis to the acts of misconduct and the offense of conviction, however, the judge need not depart upward all the way to the aggregate guideline range resulting from that calculation.... But the *fact* that the other acts of misconduct occurred, once counted in the multi-count analysis, may not be relied upon as a basis for a departure greater than that called for by the multi-count analysis."

*Kim,* 896 F.2d at 684–85 (citation omitted) (emphasis in original); *see also United States v. Ferra,* 900 F.2d 1057, 1063 (7th Cir.1990) ("It would throw the structure of the guidelines out of kelter to say that a defendant may receive more time on a 'departure' than he could have received had he been convicted of the crimes leading the judge to depart.").

We conclude that the court's discussion in *Kim* is an appropriate assessment of the means by which misconduct not resulting in conviction may be factored into the district court's sentencing decision. Because we must remand this case, *see infra,* we express no view on the appropriateness of the degree of departure here under these standards.

## III.

■ When one of two or more stated reasons for departure is invalid, the case must be remanded for resentencing because the reviewing court cannot determine whether the same departure would have resulted absent the improper factor. *See, e.g., United States v. Michael,* 894 F.2d 1457, 1460 (5th Cir.1990); *United States v. Nuno–Para,* 877 F.2d 1409, 1414 (9th Cir. 1989). Consequently, we vacate the sentence and remand.

If on resentencing the district court determines that a departure is warranted, it must state "'the specific reason for the imposition of a sentence different from that described.'" *United States v. Smith,* 888 F.2d 720, 723 (10th Cir.1989) (quoting 18 U.S.C. § 3553(c)) (emphasis added), *cert. denied,* — U.S. ——, 110 S.Ct. 1786, 108 L.Ed.2d 788 (1990). In addition, the court must "indicate whether it found the Sentencing Commission inadequately considered those factors in formulating the guidelines. Such a finding is a condition precedent to imposition of a sentence above the guideline range." *Id.* at 724. This court's assessment of the reasonableness of the degree of departure, *see White,* 893 F.2d at 278–79, is rendered difficult, if not impossible, when as here the district court does not indicate the applicable Guidelines range from which it departed. Absent a *point* of departure, we are left to speculate as to the degree. In sum, to enable meaningful review, a district court must ascertain the sentence under the Guidelines, address the applicable adjustments, and then explain what particular circumstance is present to support a departure and why that circumstance has not been adequately addressed by the adjustments built into the Guidelines.[4]

We vacate the sentence in this case and remand for resentencing in light of this opinion.

---

**4.** The district court's compliance with these procedural aspects of an upward departure is particularly critical when, as in this case, the defendant is given a relatively short sentence and is not released pending appeal.