UNITED STATES of America,
Plaintiff–Appellee,

v.

Larson Foster CHATLIN, Jr.,
Defendant–Appellant.

No. 94–10247.

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 4, 1994.*

Decided April 3, 1995.

---

* The panel unanimously finds this case suitable for disposition without oral argument. Fed. R.App.P. 34(a); 9th Cir.R. 34–4.

David Taylor Shannon, Asst. Federal Public Defender, Tucson, AZ, for defendant-appellant.

Janet K. Martin, Asst. U.S. Atty., Tucson, AZ, for plaintiff-appellee.

Before: LAY,** HALL and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Larson Foster Chatlin, Jr. pleaded guilty to sexual abuse of a minor on an Indian reservation, a violation of 18 U.S.C. §§ 1153 and 2243(a). He appeals the sentence imposed under the United States Sentencing Guidelines (the guidelines) after we vacated and remanded his previous sentence.

In the prior appeal, *United States v. Chatlin*, 15 F.3d 1090 (9th Cir.1994), we held in an unpublished disposition that the district court erred in basing its upward departure on conduct constituting aggravated sexual abuse, a crime that had not been charged pursuant to Chatlin's plea agreement. We directed the district court on remand to consider only the conduct alleged in the counts charging sexual abuse of a minor and not conduct that would constitute aggravated sexual abuse.

On remand, the district court imposed the same sentence as before—135 months, an upward departure of 102 months. In the present appeal, Chatlin contends the district court disregarded our remand by again anal-

** Hon. Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

ogizing his conduct to aggravated sexual abuse. Chatlin further argues the district court also erred in departing upward on the basis of extreme conduct, harm resulting from repetitive abuse, and extreme psychological injury to the victims. Finally, Chatlin contends the district court erred by failing to explain the extent of its departure in relation to "the structure, standards and policies" of the Sentencing Guidelines. *United States v. Lira–Barraza*, 941 F.2d 745, 751 (9th Cir. 1991) (en banc). We affirm in part, reverse in part, and vacate and remand for resentencing.

## FACTS

Chatlin was originally charged with five counts of sexual abuse of a minor. Counts I, II and III concerned Minor T, a victim unrelated to Chatlin. Minor T was thirteen years old when Chatlin initiated a consensual sexual relationship with her.

Counts IV and V concerned Minor S, Chatlin's stepdaughter. Starting when Minor S was approximately eleven years old, Chatlin forcibly molested and sodomized her two to three times a week.

Chatlin pleaded guilty to Count I, a violation of 18 U.S.C. § 2243(a),[1] sexually abusing a minor. In exchange, the government dismissed Counts II through V, and agreed not to seek a superseding indictment charging Chatlin with aggravated sexual abuse, 18 U.S.C. § 2241,[2] or with abuse of his male stepchildren.

With regard to sentencing, Chatlin and the government stipulated that Counts II and III could be considered. Although this circuit generally forbids considering dismissed counts in sentencing, *see United States v. Castro–Cervantes*, 927 F.2d 1079 (9th Cir. 1990), Chatlin agreed to waive that protection as to "the conduct set forth in Counts IV and V" if the government could prove that conduct had occurred.

The first sentencing hearing began on December 18, 1992. On February 4, 1993, the court found the government had proved the conduct alleged in Counts IV and V by a preponderance of the evidence. Analogizing Chatlin's conduct to aggravated sexual abuse, the court imposed a $500 fine and sentenced him to 135 months in prison, to be followed by 36 months of supervised release.

Chatlin appealed this sentence, contending that by sentencing him for aggravated sexual abuse, the district court had deprived him of the benefit of the plea agreement. We agreed and vacated his sentence, remanding with instructions that "[w]hen resentencing, the district court may consider only the conduct alleged in counts two through five, sexual abuse of a minor, and may not consider conduct that would constitute aggravated sexual abuse."[3]

The district court resentenced Chatlin on April 18, 1994. Once again, the court imposed a $500 fine and sentenced him to 135 months in prison, followed by 36 months of supervised release. The district court cited three grounds for its upward departure: extreme conduct, the repetitive harm resulting from long-term sexual abuse, and extreme psychological harm. The court also incorporated comments it made at the previous sen-

---

1. Sexual abuse of a minor is defined in pertinent part as:

   Whoever ... knowingly engages in a sexual act with another person who—
   (1) has attained the age of 12 years but has not attained the age of 16 years; and
   (2) is at least four years younger than the person so engaging; or attempts to do so, ...
   is guilty of sexual abuse of a minor.
   18 U.S.C. § 2243(a).

2. Aggravated sexual abuse is defined in pertinent part as:

   **By force or threat.**—Whoever ... knowingly causes another person to engage in a sexual act—

   (1) by using force against that other person; or
   (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping; or attempts to do so, ...
   is guilty of aggravated sexual abuse.
   18 U.S.C. § 2241(a).

3. We did not reach the other issues raised by Chatlin in the initial appeal, including whether the trial court erred in departing upward on the grounds of extreme psychological injury and extreme conduct and whether the trial court erred in failing to explain its sentence in light of the structure, standards, and policies of the Sentencing Act and guidelines.

tencing hearing. In these comments, the court relied once again on conduct constituting aggravated sexual abuse. This appeal followed.

## DISCUSSION

### I

In imposing a sentence, a district court may depart from the guidelines when it finds aggravating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines. 18 U.S.C. § 3553(b).

■ Our review of sentences which lie outside the guideline range proceeds in three steps. *Lira–Barraza,* 941 F.2d at 746–47. First, we review de novo whether the district court had legal authority to depart. Second, we review for clear error the district court's factual findings of the factors relied upon for its upward departure. Third, we review for abuse of discretion the extent of the departure, to determine whether the departure is reasonable within the meaning of 18 U.S.C. § 3742(a)(3) and (f)(2). *Id.*

### A. Aggravated Sexual Abuse

■ When the district court resentenced Chatlin. following our remand, it departed upward and 'relied again, as it had before, on Chatlin's physical abuse of Minor S and her siblings. This disregarded our remand, which forbade considering conduct relating to aggravated sexual abuse.[4]

The violence or force element of aggravated sexual abuse, 18 U.S.C. § 2241(a), distinguishes it from sexual abuse, 18 U.S.C. § 2243(a). *See United States v. Sneezer,* 983 F.2d 920, 923 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 113, 126 L.Ed.2d 79 (1993); *accord United States v. Fire Thun-*

der, 908 F.2d 272, 274 (8th Cir.1990); *see also* notes 1 and 2, *supra* (quoting relevant statutes). Chatlin's physical abuse of Minor S and her siblings "plac[ed] [Minor S] in fear that any person w[ould] be subjected to death, serious bodily injury, or kidnapping" unless she had sex with him, and thus constituted aggravated sexual abuse. 18 U.S.C. § 2241(a)(1).

As the government states:

The physical abuse of Minor S set the stage for the sexual abuse that was to come later. Minor S knew that Chatlin was violent and that he would not hesitate to hurt her. Therefore, this violence aid[ed] and abetted the commission of the later offenses by making her a more vulnerable victim.

\*   ·   \*     \*     \* .   \*     \*

The abuse that Minor S saw perpetrated against her brothers and dogs was the major basis for her fear and belief that defendant would, in fact, kill her, her brothers or mother if she told the police about their sexual relations. This conduct, therefore, was intimately related to the sexual abuse itself.

The district court erred when, despite Chatlin's plea bargain and our remand, it considered aggravated sexual abuse in resentencing him. It did not err, however, in considering extreme conduct, repetitive conduct, or extreme psychological injury.

### B. Extreme Conduct

■ The guidelines authorize departures based on extreme conduct:

If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of ex-

---

4. The district court cited several factors justifying upward departure (factors which the court incorporated at the second sentencing), including: (1) Minor S was subjected to "a continuous pattern of sexual abuse in the home of a predatory nature committed by someone who is in the position of a parent," (2) Chatlin broke Minor S's arm; (3) Chatlin forced Minor S to eat Tabasco sauce; (4) Minor S saw Chatlin break her younger brother's arm; (5) Minor S saw Chatlin force her younger brother to eat Tabasco sauce; (6) Minor S was present when Chatlin whipped her seven-year-old brother; (7) Minor S was aware that Chatlin sexually abused her younger brother; (8) Minor S underwent extensive therapy; (9) Minor S lives in fear of Chatlin; (10) Minor S would sleep with her younger sister on her stomach to protect her from sexual abuse by Chatlin; and (11) Minor S was held back in school.

treme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation.

USSG § 5K2.8, p.s.

The type of sexual activity committed during a crime may justify a finding of extreme conduct.[5] *See United States v. Anderson,* 5 F.3d 795, 805 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1118, 127 L.Ed.2d 428 (1994); *see also United States v. Ellis,* 935 F.2d 385, 396 (1st Cir.) (holding that "particularly degrading and insulting forms" of sexual abuse committed by defendant, including fellatio, cunnilingus, and digital penetration, warranted upward departure), *cert. denied,* 502 U.S. 869, 112 S.Ct. 201, 116 L.Ed.2d 160 (1991).

We conclude that extreme conduct may be established by a showing of anal intercourse, which is a degrading form of sexual abuse. An upward departure for such conduct is appropriate in this case.

## C. Repetitive Conduct

■ The district court also relied on the repetitive harm resulting from long-term sexual abuse as a basis for departing upward. While repetitive conduct is not specifically mentioned in the guidelines, it is an accepted basis for an upward departure. *See United States v. Fawbush,* 946 F.2d 584, 587 (8th Cir.1991) (holding that USSG § 4A1.3(e), p.s., which permits upward departure when "prior similar adult criminal conduct not resulting in a criminal conviction" exists, supported departure based on defendant's prior sexual abuse of his daughters, for which he had not been charged); *United States v. Claymore,* 978 F.2d 421, 424–25 (8th Cir. 1992) (affirming an upward departure when

defendant was charged with only one sexual act, although he raped the thirteen-year-old victim several times during a three-month period); *see also United States v. Zamarripa,* 905 F.2d 337, 341 (10th Cir.1990) (noting that "an upward departure may be supportable on the basis of [the defendant's] multiple sexual contacts with the same victim"); *cf. United States v. Pergola,* 930 F.2d 216, 219 (2d Cir.1991) (repeated unlawful threats by defendant against the victim justified upward departure under USSG § 5K2.3, p.s. (extreme psychological injury) and USSG § 5K2.8, p.s. (extreme conduct)).

Although the district court's findings of repetitive conduct are supported by the record, Chatlin contends the court's reliance on this ground deprived him of the benefit of his plea bargain, because the repeated acts considered by the court were acts of aggravated sexual abuse.

We disagree. In departing upward, the district court considered the repetitive, rather than the violent or forceful, nature of Chatlin's conduct. Thus, the court's consideration of repetitive conduct did not deprive Chatlin of the benefit of his plea bargain.[6]

## D. Extreme Psychological Injury

■ The guidelines authorize departures based on extreme psychological injury:

If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to

---

5. We have previously declined to consider reasons given by one of the parties, rather than by the district court, for departing from the guidelines. *See United States v. Reyes,* 8 F.3d 1379, 1384–85 (9th Cir.1993). Generally, on review, the appellate court does "not search the record for permissible reasons for departure; instead, [the court] analyze[s] the reasons actually given by the district court." *United States v. Montenegro-Rojo,* 908 F.2d 425, 428 (9th Cir.1990).

Here, the district court never cited the type of sexual activity Chatlin perpetrated as support for its finding of extreme conduct. Nor did the district court explain in general why it found

extreme conduct in this case. The record, however, reflects instances of extreme conduct to which the district court may wish to refer in resentencing Chatlin.

6. USSG § 2A3.2(b)(1) adjusts for the victim being in the care of the abuser. In finding repetitive harm, the district court remarked that Minor S was abused "by someone who is in the position of a parent." On remand, the district court should disregard this factor when departing upward, as it is taken into consideration by § 2A3.2(b)(1).

which the injury was intended or knowingly risked.

Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns. The court should consider the extent to which such harm was likely, given the nature of the defendant's conduct.

USSG § 5K2.3, p.s.

■ The government bears the burden of proving that Minor S suffered psychological harm greater than that "normally" resulting from sexual abuse. *Zamarripa*, 905 F.2d at 340–41. There is no hard and fast rule establishing the type and quantum of evidence sufficient to meet this burden. *Compare Fawbush*, 946 F.2d at 586 & n. 2 (finding no evidence that either victim "suffered psychological harm greater than that normally resulting from sexual abuse" where district court did not have the benefit of expert testimony, and the only evidence was that one victim "has been participating and continues to participate in individual group and family therapy") *with Anderson*, 5 F.3d at 804–05 (upholding an upward departure on the basis of extreme psychological injury when the only evidence was a letter from the victim describing "substantial changes in [her] psychological and behavioral functioning") *and Ellis*, 935 F.2d at 396–97 (finding that testimony from a counselor that the child victim suffered extreme stress, fear of physical harm to herself and her family, and guilt over the sexual abuse evidenced the degree of psychological injury contemplated by USSG § 5K2.3).

In this case, the district court found:

In terms of extreme psychological harm, I believe that I mentioned at the previous sentencing in this matter, among the indications of the extreme psychological harm and the harm suffered by the various victims, I believe I referred to the fact that

[Minor S] underwent intensive therapy as [a] result of this, and feared harm to herself and her family from the defendant. And I referred to the fact that she engaged in the practice of sleeping with her younger sister on top of her so that she could protect her younger sister from the defendant. Also, she was held back in school, and that is attributed to the psychological trauma that she underwent from the sexual abuse.

These findings are supported by the record. While staying at a home for unwed mothers, Minor S received intensive therapy two to three times a week for nine months for her post-traumatic stress disorder. Two and one-half years after the last incident of abuse, Minor S still suffered from nightmares, flashbacks, and loss of concentration.

In addition, a psychological evaluation by Dr. Gallenstein stated:

[Minor S] has spent the last year in intensive therapy while staying in a residential program for unwed teenage mothers. At age 15, [Minor S] has a three month old child to raise and has attempted to go on with her life. She was able to complete two years of schooling while in placement to help return to her to the appropriate grade level for her chronological age. Despite her courage in facing her abuse and attempting to overcome the hardships it has caused her, she has expressed fear that Larson will find her and her child when he is released from jail and brutally harm both of them.

■ Chatlin contends that because Dr. Gallenstein did not state that Minor S suffered greater than normal psychological harm, the government failed to meet its burden of proof. We disagree. Well reasoned cases from other circuits have upheld upward departures in the absence of such specific expert testimony. *See Anderson*, 5 F.3d at 804; *Ellis*, 935 F.2d at 396–97. We agree with their analysis.

Moreover, even *Zamarripa*, the case on which Chatlin relies, undercuts his position. There, the Tenth Circuit reversed a finding of extreme psychological injury where the parties stipulated that the victim's therapist

could not state that the victim suffered greater than normal harm. *Zamarripa,* 905 F.2d at 341. Significantly, however, the court did not consider this factor dispositive. Not until it "carefully reviewed the presentence report" and found that it "add[ed] nothing to support" the district court's finding did the Tenth Circuit reverse. *Id.*

We conclude the government met its burden of proving Minor S suffered greater than normal psychological injury. Unlike *Fawbush,* here, a psychologist "guided the court's decision to depart upward." *Fawbush,* 946 F.2d at 586. Moreover, the lingering effects of the abuse on Minor S are similar in type and degree to those experienced by the victims in *Anderson* and *Ellis. See Anderson,* 5 F.3d at 804–05 ("substantial changes in [the victim's] psychological and behavioral functioning," including loss of feelings of confidence, trust, and independence, demonstrated serious psychological injury); *Ellis,* 935 F.2d at 396–97 (extreme stress, fear of physical harm to herself and her family, and guilt over the sexual abuse evidenced injury).

## II

### Extent of the Departure

■ Once a district court determines legal grounds for departure exist, it may depart from the established guideline range. 18 U.S.C. § 3553(b). In departing, the court must explain why it departed and the extent of the departure, relating this "to the structure, standards and policies" of the guidelines. *Lira–Barraza,* 941 F.2d at 751.

In resentencing Chatlin, the district court departed upward by 102 months from a maximum sentence of 33 months, an increase of 13 levels within criminal history category I. It did so by analogizing in part to USSG § 2A3.1, the aggravated sexual abuse guideline. This deprived Chatlin of the benefit of his plea bargain and disregarded our remand. We therefore vacate Chatlin's sentence and remand for resentencing. *See Williams v. United States,* 503 U.S. 193, 203–04, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992) (remand required when factors do not justify the extent of the departure).

On remand, the district court may not base its upward departure on conduct which we have described in this opinion as aggravated sexual abuse, nor may it analogize to the aggravated sexual abuse guideline. In addition, it must explain the reasons for whatever upward departure it imposes, and relate the extent of its departure to "the structure, standards, and policies" of the guidelines. *See Lira–Barraza,* 941 F.2d at 751.

■ Chatlin requests that we reassign this case to a different judge. In determining whether reassignment is appropriate, we must consider "(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *United States v. Arnett,* 628 F.2d 1162, 1165 (9th Cir.1979) (quoting *United States v. Robin,* 553 F.2d 8, 10 (2d Cir.1977) (en banc)). Having considered these factors, we conclude reassignment to a different judge is not required.

### CONCLUSION

An upward departure based on extreme conduct, repetitive conduct, and extreme psychological injury is authorized by the guidelines and supported by the record. The district court erred, however, in relying, contrary to the plea agreement and our previous remand, on aggravated sexual abuse as an additional ground for its departure. The district court also failed to explain the reasons for, and extent of, its upward departure. Chatlin's sentence is vacated and this cause is remanded to the district court for resentencing in accordance with this opinion.

VACATED and REMANDED for resentencing.